IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**UNITED STATES OF AMERICA**

vs.                                       CASE NO.: 4:05-CR-048-SPM

**GABRIEL RAMOS,**

        Defendant.
_____/

**ORDER DENYING MOTION TO SUPPRESS**

**THIS CAUSE** comes before the Court upon the "Motion to Suppress" (doc. 21) filed November 16, 2005 and the Government's response (doc. 24) filed December 14, 2005.  Defendant seeks to suppress evidence of 100 kilograms of cocaine seized during a search of Defendant's tractor-trailer.  The Court held a hearing on December 19, 2005 at which both sides presented evidence and testimony.  For the reasons set forth below, the Court finds the motion must be denied.

**FACTS:**

Defendant is a long-haul truck driver who was delivering tomatoes from California to Florida on the date of the incident.  He possessed a bill of lading showing that he was carrying 1,512 cases of small Roma tomatoes and a temperature recorder from Oceanside, California to Immokalee, Florida.  He also possessed ticket from previous weigh stations showing that his load was within the

carrying capacity of his truck.

On September 16, 2005, Defendant was traveling eastbound on I-10 and stopped at a Department of Agriculture (FDOA) inspection station in Live Oak. His first encounter after pulling into the station was with FDOA officer Barbara Bland. Upon reviewing Defendant's shipping documents, Bland noticed 1) that Defendant appeared to be driving in the wrong direction;[1] and 2) that Defendant's truck carried less than a full load of tomatoes. Officer Bland attempted to question Defendant about these issues, but received replies first in broken English and then solely in Spanish. Based on her inability to resolve the discrepancies noted, Bland directed Defendant to a secondary inspection area.

Once Defendant moved his truck to the secondary inspection station, he was instructed to drive it through a mobile X-ray system known as VACIS (Vehicle and Cargo Imaging System). The scan showed "a stack of irregularly-sized boxes in the front of the trailer, with both the sizes of the boxes and the contents of the boxes being inconsistent with the remaining cargo" (doc. 24 at 2). FDOA Officer Jason Ross was manning the machine that afternoon and testified that the scan, which took less than ten seconds, revealed that the cargo in the front of the trailer showed up in a lighter color than the remainder. He noticed that the first pallet was single, while the rest were doubled up. He noticed a dark area at the bottom of the first three pallets, which was inconsistent with the appearance of the other cargo in the

---

[1] This turned out to be a printing error on the bill of lading. Because the formatting and alignment were slightly off, the document appeared as though the cargo was coming from Immokalee, when it was really (and properly) traveling toward Immokalee.

trailer.  Based on this information, he asked Defendant to unlock and open the cargo doors.  Officer Ross then entered the truck and conducted a visual inspection, which led to the discovery of 100 kilograms of cocaine, worth approximately $2.5 million.  Defendant now moves to suppress this evidence.

**ANALYSIS:**

Defendant argues that he falls within the inspection exemption listed in F.A.C. 5A-16.003(6)(b), which covers "[f]ully loaded vehicles transporting only tomatoes accompanied by a valid inspection certificate covering an amount of tomatoes compatible with the carrying capacity of said vehicle."  This argument fails for a number of reasons.

First, Defendant did not possess a valid inspection certificate.  Such certificates are given only to tomatoes grown in Florida, and are only issued to drivers carrying full loads.  As Defendant's tomatoes were coming from California, and he was carrying less than a full load, no inspection certificate was issued.

Second, Florida Administrative Code 5A-16.003(1)(b) specifies that "inspection also includes examination of the cargo of . . . . [v]ehicles having documentation of cargo which is apparently altered or inconsistent with the physical characteristics of said vehicle."  Officer Bland testified that most trucks come very close to meeting the 80,000-pound weight limit and that it struck her as quite unusual for a truck to carry less than the full potential amount.  She acted well within her authority by directing Defendant to the secondary station for further inspection.

Finally, Florida Statutes section 570.15 governs the DOA's access to

vehicles, buildings and other equipment:

> The commissioner, inspectors, road guard inspection special officers, and other such employees . . . shall have full access at all reasonable hours to . . . truck and motor vehicle trailers . . . which are used . . . in the . . . storage, sale or transportation within the state of any food product . . . . The department may examine and open any package or container of any kind containing or believed to contain any article or product which may be transported, manufactured, sold, or offered for sale in violation of the provisions of this chapter, the rules of the department, or the laws which the department enforces and may inspect the contents and take samples for analysis.

§ 570.15(1)(a)-(b), FLA. STAT. (2005).

Having heard the testimony in this case, the Court finds first that Defendant does not fall under the exception listed in Florida Administrative Code 5A-16.003(6)(b). Consequently, his truck was subject to inspection under the laws discussed *supra*. Only when Officer Bland was unable to satisfactorily resolve the discrepancies she noted in Defendant's shipping documentation did she refer Defendant to the secondary inspection area. There, Officer Ross used the speediest and least intrusive means possible (VACIS) to inspect Defendant's cargo. Again, it was only after scanning the truck and noticing the suspicious arrangement of the pallets toward the front of the trailer that Officer Ross asked Defendant to open the truck's rear doors in order to perform a visual inspection. The Court finds that the DOA officers acted legally during their encounter with Defendant and that the evidence should not be suppressed.

Accordingly, it is

**ORDERED AND ADJUDGED** that the motion to suppress (doc. 21) is hereby

*denied*.

**DONE AND ORDERED** this <u>twenty-eighth</u> day of December, 2005.

    *s/ Stephan P. Mickle*
Stephan P. Mickle
United States District Judge

/pao